**In re William V. MILLER and Judith L. Miller, Debtors.**

**Bankruptcy No. 89–2868PGH.
Motion No. 90–9502.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 25, 1991.

Robert W. Koehler, Pittsburgh, Pa., for debtors.

Kevin John Witasick, Phoenix, Ariz., for Pointe Tapatio Cliffs Community Ass'n.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

The issues before the Court are whether William V. Miller and Judith L. Miller (the "Debtors") may reopen their bankruptcy case to amend the Statement of Executory Contracts in their schedules to include an agreement (the "Contract") between the Debtors and Pointe Tapatio Cliffs Community Association (the "Association") and if permitted to amend their schedules, whether the Debtors can reject the Contract discharging themselves of liability for postpetition condominium association assessments. Both the Debtors and the Association also request the imposition of sanctions.

### Facts

After consideration of the Motion and having heard the Debtors' position at hearing and upon consideration of the Association's response and memorandum, we find this matter is ripe for decision without further hearings.

The Debtors filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on October 26, 1989. The case was closed as a no-asset case on October 23, 1990.

At the time of filing, the Debtors owned a condominium at 10408 North 11th Street, Phoenix, Arizona (the "Condominium") which was encumbered by a first mortgage held by Citicorp Mortgage. The mortgage balance exceeded the value of the Condominium. On February 26, 1990, Citicorp Mortgage was granted relief from the automatic stay to foreclose on its interests.

When the Debtors purchased the Condominium, they entered into the Contract with the Association in which the Debtors agreed to pay the Association assessments for the improvement and maintenance of Association properties. The Contract allowed the Association to place a lien against the Condominium for any unpaid assessments.

At the time the Debtors filed their Bankruptcy Petition, they were current on payment of their assessments and owed nothing to the Association.

The Association was not listed in the Debtors' schedules, either as a creditor or in the Statement of Executory Contracts.

On January 8, 1990, the Association invoiced the Debtors for 1990 assessments on the Condominium.

The Debtors assert that the Association was notified of the bankruptcy in December 1989, while the Association maintains that it did not learn of the bankruptcy until after the 1990 assessments were billed.

In any event, after learning of the bankruptcy, the Association continued to assert that the Debtors are liable for the 1990 assessments and in October 1990 filed a Complaint to enforce collection against the Debtors in the Superior Court of Maricopa County, Arizona.

### Discussion

#### Reopening the Case to Amend Schedules

■ "A case may be reopened ... to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). When a creditor suffers no prejudice and there is no evidence of fraud or intentional design behind the omission, a debtor is permitted to amend his schedules. *See In re Soult*, 894 F.2d 815 (6th Cir. 1990); *In re Baitcher*, 781 F.2d 1529 (11th Cir.1986); *In re Rosinski*, 759 F.2d 539 (6th Cir.1985); *In re Stark*, 717 F.2d 322 (7th Cir.1983).

■ Since the within case was closed as a no-asset case, the Association suffers no prejudice by not having had the opportunity to file an earlier proof of claim. If assets are later discovered, the Association will be entitled to their proportionate distribution.

Debtors' failure to list the Association as a creditor or on their Statement of Executory Contracts is explained by the fact that the Association was owed nothing at the time of filing and by the Debtors' intent to abandon the property to the secured lender. The Association was notified of the bankruptcy and of the Debtors' position

well before it took action in State Court to recover assessments against the Debtors. There is no allegation of fraud or intentional omission. We will permit the Debtors to reopen their case and amend their schedules.

### Discharge of Liability for Postpetition Condominium Assessments

The Association asserts that bankruptcy case law provides that a condominium association can collect assessments that accrue after the date of the filing of a bankruptcy petition and cites *In re Harvey*, 88 B.R. 860 (Bankr.N.D.Ill.1988); *In re Rink*, 87 B.R. 653 (Bankr.D.Colo.1987); *In re Horton*, 87 B.R. 650 (Bankr.D.Colo. 1987); *In re Lenz*, 90 B.R. 458 (Bankr.D. Colo.1988); *In re Strelsky*, 46 B.R. 178 (Bankr.E.D.Va.1985); and *In re Stern*, 44 B.R. 15 (Bankr.D.Mass.1984) in support of its proposition.

The Association fails, however, to acknowledge or point out that courts addressing this issue are divided and that many courts have held that postpetition condominium association fees arise from a prepetition contract and thus are prepetition debts typically discharged by bankruptcy. *In re Rosteck*, 899 F.2d 694 (7th Cir.1990).

Some courts have held that postpetition condominium association assessments are discharged even if a condominium owner retains the property, stays in possession and continues to enjoy his home free from assessments. *In re Sharpe*, 98 B.R. 337 (N.D.Ill.1989); *In re Montoya*, 95 B.R. 511 (Bankr.S.D.Ohio 1988).

Other courts have held that when a debtor is abandoning the property, ownership is being relinquished, the debtor is not in possession and receives no future benefit from the condominium association assessments, the debtor is not liable for future assessments. *In re Turner*, 101 B.R. 751 (Bankr.D.Utah 1989); *In re Ryan*, 100 B.R. 411 (Bankr.N.D.Ill.1989).

In *Turner*, the court limited the condominium association's recovery to the lien rights it had under its agreement, even though prior encumbrances exceeded the value of the property.

In the instant case, the Debtors and the Association dispute the date that the Association was notified of the Debtors' intent to abandon the property. However, the mortgage holder was granted relief from stay to proceed with foreclosure on February 26, 1990. Any benefit bestowed upon the property by the Association accrued to the mortgage holder, not the Debtors. We find it irrelevant that the Debtors were the record owners of the property until the actual foreclosure proceeding took place.

Shortly after the bankruptcy filing, the Debtors relinquished ownership. The Debtors were not occupying the condominium and will receive no future benefits from the Association.

For the foregoing reasons, the Debtors will be permitted to reject the Contract.

The Association will be barred from any further proceedings to effect collection against the Debtors on the Contract.

### Sanctions

The Association asserts that the Debtors' attempt to reopen this case is completely unfounded, and borders on bad faith. We think the assertions by the Association, without any reference to contrary case law, borders on bad faith.

However, we will not impose sanctions on either party since legal authority exists supporting the position of each party.

An appropriate order will be entered.

### ORDER

This 25 day of March, 1991, in accordance with the accompanying OPINION, it shall be, and hereby is, ORDERED as follows:

1. The Debtors' Motion to Reopen Case is GRANTED.

2. The Debtors may amend their Statement of Executory Contracts.

3. The Debtors may then reject their executory contract with Pointe Tapatio Cliffs Community Association.

4. Pointe Tapatio Cliffs Community Association shall be, and hereby is, enjoined

and restrained from further proceedings against the Debtors to collect assessments on the condominium unit located at 10408 North 11th Street, Phoenix, Arizona.