**In re Kallen D. HENDERSON and Janis K. Henderson, Debtors.**

**Bankruptcy No. 92–07271–B13.**

United States Bankruptcy Court, S.D. California.

June 8, 1993.

William J. Howell, San Diego, CA, for debtor.

Harry W. Heid, Trustee, San Diego, CA.

· Lisa Frazee Morgosh, Alan Burson, Feist, Vetter, Knauf & Loy, Oceanside, CA, for Seabreeze.

District Counsel, IRS, Sylvia Shaughnessy, San Diego, CA, for IRS.

William Braniff, U.S. Atty., San Diego, CA, for U.S.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Bankruptcy Judge.

This matter is before the Court as a result of the authorized sale of property of the estate by the debtors, Kallen and Janis Henderson. The Hendersons subsequently noticed their intent to distribute proceeds from the sale. The Seabreeze Condominium Owners Association ("Seabreeze") objected to the proposed distribution. This

Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157 and the matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O).

## FACTS

In 1978, prior to this bankruptcy, the Hendersons purchased a condominium in Oceanside, California. In doing so, they became part of Seabreeze, subject to its Covenants, Conditions and Restrictions ("CC & R's"). Article VI, § 6.7 of the CC & R's creates an assessment lien for unpaid association dues pursuant to California Civ.Code § 1366.

The Hendersons failed to pay certain association dues and on July 17, 1985, Seabreeze recorded a lien with the San Diego County Recorder in the sum of $651. The lien states in § 1(c) that it includes "... all other homeowner assessments, interests, costs, expenses, and fees, including reasonable attorney's fees that accrue after recordation of this Notice." After Seabreeze recorded this lien, the Hendersons failed to pay further monthly dues, but Seabreeze did not record a lien for these dues until January 13, 1992.

On April 25 and May 2, 1988, the Internal Revenue Service ("IRS") assessed taxes and created liens pursuant to 26 U.S.C. §§ 6321 and 6322. On January 19, 1989, the IRS recorded a Notice of Federal Tax Lien at the San Diego County Recorder for these assessments. On February 24, March 2 and June 8, 1992, the IRS assessed further taxes and created liens pursuant to 26 U.S.C. §§ 6321 and 6322. The IRS never recorded these liens.

On June 18, 1992, the Hendersons filed their Chapter 13 petition. They sold their condominium and the proceeds are being held pending a determination by this Court of the relative priority of distribution between Seabreeze and the IRS, with respect to the unpaid dues which were unperfected until January 13, 1992.

## ISSUE

Whether the recorded lien of a condominium association for accrued unpaid dues constitutes a perfected, secured lien for subsequently unpaid, unmatured and contingent assessments, which is entitled to priority over federal tax liens arising after the association's recorded lien.

## DISCUSSION

Seabreeze concedes that the subsequent unpaid dues were unmatured, contingent assessments at the time it recorded its lien. Seabreeze cites to a holding of this Court which characterized such future unpaid dues as pre-petition debts despite their contingent status. *Cohen v. North Park Parkside Community Ass'n*, 122 B.R. 755, 758 (Bankr.S.D.Cal.1991). In *Cohen*, the court held that the unpaid dues which arose post-petition were dischargeable because the liability already existed at the time of filing. *Id.*

*Cohen* is distinguishable because its holding merely addressed the issue of when a debt arises for purposes of dischargeability. It did not address the issue of when competing liens arise in the same property as is the issue in this case.

Federal law determines the priority of federal tax liens relative to competing liens. *United States v. Acri*, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955). The general rule for determining lien priorities is that the lien filed first has priority over those liens which are filed later. *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). In certain cases, the federal tax lien created by 26 U.S.C. § 6321 has priority over other liens even though the federal lien is not recorded. Only those lienholders specifically listed in 26 U.S.C. § 6323 are entitled to priority over unrecorded federal tax liens. *Don King Productions, Inc. v. Thomas*, 945 F.2d 529, 533 (2d Cir.1991). To obtain priority over federal tax liens which arise pursuant to 26 U.S.C. § 6321, such lienholders must create liens which are choate. *U.S. v. Wingfield*, 822 F.2d 1466, 1473 (10th Cir.1987); *In re Priest*, 712 F.2d 1326, 1328 (9th Cir.1983). Choate liens are those which are certain as to amount, identity of lienholder and identity of the property. *New Britain*, 347 U.S. at

86, 74 S.Ct. at 371. Moreover, there is universal agreement that contingent claims are inchoate. *United States v. Vermont,* 377 U.S. 351, 355, 84 S.Ct. 1267, 1270, 12 L.Ed.2d 370 (1964).

■ Federal law will determine the relative priorities in this case because the competing liens involve a federal tax lien and a state law lien (i.e., the Seabreeze lien). There is little dispute that the initial Seabreeze lien filed in 1985 meets the general "first in time" rule. But there is no basis for holding that subsequent unpaid dues which may or may not remain unpaid due to various contingencies should be encompassed by that initial lien. Those future unpaid dues are merely unmatured and contingent. The future dues are inchoate until the amount is made certain, the lienholder's identity is established and the property is identified. Although it is arguable that the last two requirements are met, the amounts were impossible to ascertain in 1985 because they had not yet become due. Once they became due, Seabreeze should have filed liens for those certain amounts to perfect its interest. Seabreeze did not do so until January 13, 1992. Rather, it relied on a 1985 lien in which the only amount made certain was $651. Therefore, the IRS liens, which arose prior to January 13, 1992, should maintain priority over the subsequent unpaid dues because the 1985 lien was inchoate and contingent as to those future amounts not specified in the 1985 lien.

## CONCLUSION

Seabreeze did not record liens for any amounts which became due after its 1985 lien until January 13, 1992. Having failed to do so, it ran the risk that future unpaid dues would remain inchoate. Such inchoate, unmatured and contingent amounts are inferior to federal tax liens which arise pursuant to 26 U.S.C. § 6321. The proceeds of sale shall first be distributed to payment of the Seabreeze lien of $651 and next to payment of the IRS liens which arose prior to January 13, 1992.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to FRBP 7052. The IRS is directed to prepare an order in accordance with this Memorandum Decision within 10 days from its entry.